# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-01145 (ABG) |
| THE OFFICIAL COMMITTEE OF SECOND PRIORITY NOTEHOLDERS,<br><br>Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION,<br><br>Defendant. | Adversary Case No. 15-_____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

[1] Due to the large number of Debtors in these jointly-administered cases, a complete list of the Debtors is not provided herein, but is available at https://cases.primeclerk.com/CEOC, the website of the Debtors' claims and noticing agent.

## NATURE OF THE ACTION AND THE NEED FOR RELIEF

1. The Official Committee of Second Priority Noteholders (the "Noteholder Committee" or the "Plaintiff"), brings this action against Caesars Entertainment Corporation ("CEC"), the non-debtor parent of debtor Caesars Entertainment Operating Company, Inc. ("CEOC"), to obtain declaratory and injunctive relief regarding CEC's unlawful effort to purchase votes from holders of Second Priority Notes pursuant to the Restructuring Support And Forbearance Agreement, dated as of July 20, 2015 (the "Second RSA").[2]

2. CEC has agreed to make payments to Second Priority Noteholders who become parties to the Second RSA by a specified date (the so-called "Forbearance Fee Parties") in exchange for the agreement of those holders, among other things: (a) to vote in favor of a Plan that provides a broad release of valuable estate and third-party claims against CEC and its affiliates, and enables CEC to retain ownership and control of CEOC in violation of the absolute priority rule; and (b) not to support or vote for any alternative plan or restructuring of CEOC.

3. The payments to be made by CEC include $200 million in convertible notes to be issued by CEC, misleadingly called the "RSA Forbearance Fees." Those notes will be shared only by the "Forbearance Fee Parties" and not by any other noteholders or creditors. Further, if the class of Second Priority Notes as a whole ultimately votes to reject the Plan, another $200 million in CEC convertible notes and an additional combination of PropCo equity interests, cash payments and consideration valued at more than $89 million that otherwise would have been distributed under the Plan to the entire class of Second Priority Notes instead will be delivered to the locked-up Second Priority Noteholders.

---

[2] Capitalized terms not defined in this Motion have the meanings set forth in the Second RSA. However, consistent with past practice, this Complaint uses the term "Second Priority Notes" in place of the Second RSA's term "Second Lien Bonds" in reference to the securities held and represented by members of the Noteholder Committee.

2

4.     CEC already has induced what it describes as holders "of a significant amount of" Second Priority Notes to execute the Second RSA, and has pledged to continue its illegal vote-buying campaign to "obtain additional support from other CEOC creditors."  This ongoing effort by a non-debtor insider to buy votes in favor of the Plan threatens irreparable harm not only to the Second Priority Noteholders represented by the Noteholder Committee but to all parties in interest in the bankruptcy cases of CEOC and its subsidiaries (collectively, the "Debtors") – and to the integrity of the bankruptcy process itself.

5.     Most acutely, CEC's vote-buying efforts will result in a fatally-flawed solicitation process and cause irreparable harm to all Second Priority Noteholders, including those who will be deprived of hundreds of millions of dollars if they choose not to sign the Second RSA and those who are coerced into signing the Second RSA and then face the prospect of designation of their votes.  More generally, all parties in interest will suffer from the delay and enormous expense that will result if CEC taints the plan confirmation process through bribery and coercion.

6.     Accordingly, the Noteholder Committee seeks a declaration that CEC's purchase of votes pursuant to the Second RSA is unlawful and prohibited under the Bankruptcy Code. The Noteholder Committee also requests an injunction restraining CEC, on a preliminary and permanent basis, from paying or agreeing to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC or against any alternative plan that may be proposed, whether pursuant to the Second RSA or an alternative agreement.

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction over the claims for relief in this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(A), (L) and (O).

8. Venue for this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

9. This adversary proceeding is initiated pursuant to 28 U.S.C. § 2201 and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

## PARTIES

10. Plaintiff, the Noteholder Committee, was appointed by the Office of the United States Trustee on February 5, 2015, to represent the interests of all holders of more than $5.2 billion in principal amount of Second Priority Notes issued by CEOC under three indentures.

11. Defendant CEC is a Delaware corporation that, through its subsidiaries, joint ventures and other arrangements, owns, operates and manages gambling casinos, hotels and entertainment properties in the United States and foreign countries. According to CEC, it owns 89% of the equity in CEOC and controls CEOC's board. CEC maintains its principal place of business at One Caesars Palace Drive, Las Vegas, Nevada.

## FACTUAL ALLEGATIONS

**A. CEC's Prior Efforts to Buy Votes.**

12. On December 19, 2014, prior to the commencement of the bankruptcy cases, CEOC and CEC entered into a Restructuring Support Agreement with certain First Lien Bondholders (the "First RSA"). Under the original version of the First RSA, attached to an SEC filing dated December 22, 2014, *all* holders of First Lien Bonds were to receive a *pro rata* distribution from CEOC *under a plan of reorganization* of, among other consideration, $413 million in cash. First Lien Bondholders who signed the First RSA were required to vote in favor of a plan of reorganization that was to provide sweeping releases of CEC and its affiliates, while enabling CEC to retain ownership and control of CEOC.

4

13. In order for the agreement to become effective, holders of at least 60% of the outstanding First Lien Bonds needed to execute the First RSA by January 5, 2015. Falling short of that hurdle, the First RSA did not become effective by that date. Having failed to sell the proposed plan on its merits, CEC then commenced illicit vote-buying and coercion efforts, announcing on January 5, 2015, that the First RSA would be revised to *reduce* the cash consideration paid to *all* First Lien Bondholders by $206 million and, instead, to provide for CEC to pay that $206 million, as a "forbearance fee," directly and *only* to those holders who executed the First RSA and agreed to vote in favor of the Plan. CEC thus proposed to pay First Lien Bondholders to vote for the Plan, and tried to coerce and induce those holders to sign the First RSA by reallocating $206 million that previously was to be paid *pro rata* among *all* First Lien Bondholders.

14. On January 12, 2015, CEC and CEOC announced that they would seek "consents" of the First Lien Banks – a different constituency holding approximately $5.4 billion in debt – to the First RSA. CEC promised to pay a $150 million "consent fee" directly to those holders of First Lien Bank Debt who approved the First RSA on or before January 14, 2015. That fee was not to be shared with other holders of First Lien Bank Debt. The purpose of the fee was, once again, to coerce and induce creditors to vote in favor of the Plan contemplated under the First RSA.

15. Also on January 12, 2015, an involuntary petition was filed against CEOC, and CEOC and the Debtors filed voluntary bankruptcy petitions shortly thereafter. Notwithstanding the commencement of those cases, however, CEOC and CEC continued to press ahead with the First RSA. On March 2, 2015, the Debtors filed an unsigned draft plan of reorganization, apparently in an effort to comply with a "milestone" established under the First RSA. Then,

5

having failed to meet other milestones under the agreement, CEC and CEOC executed an amended First RSA, dated as of August 1, 2015, that keeps First Lien Bondholders on the hook and extends various milestones into the middle of 2016.

    **B.    The Second RSA.**

16.    On July 20, 2015, CEC announced that it had "entered into a restructuring agreement with holders of a significant amount of CEOC's second-lien notes" and that it is "continuing to work to obtain additional support from other CEOC creditors." The next day, CEC filed a Form 8-K disclosing a summary of the terms and conditions of the Second RSA and including a purported "Execution Version" thereof.

17.    The Second RSA is not currently effective. In order to become effective, it must be accepted by more than 50% of holders of Second Priority Notes by August 19, 2015, a deadline that can be extended unilaterally by CEC for 30 days. Second RSA § 15.

18.    If the agreement becomes effective, the "Forbearance Fee Parties" (those Second Priority Noteholders who execute the agreement by the later of August 29 or the agreement effective date), but not any other Second Priority Noteholders or other creditors, become entitled to receive directly from CEC the "RSA Forbearance Fees," consisting of $200 million principal amount of CEC convertible notes. *Id.*, Ex. A at 1. Further, if the class of Second Priority Notes as a whole votes to reject the Plan, the following additional consideration that would otherwise be distributed under the Plan to the entire class of the Second Priority Notes instead will be diverted and distributed solely to the Forbearance Fee Parties: (a) the Class Convertible Notes (an additional $200 million in convertible notes); and (b) the Class Acceptance Payment (4.9% of PropCo equity, or cash payments, with a Plan value of approximately $89 million, and 50% of the recovery of Caesars Acquisition Company under the Plan on account of its holdings of unsecured CEOC notes). *Id.*

6

19. In return for those payments, the Forbearance Fee Parties (and any other Second Priority Noteholders who later execute the agreement) are required, among other things, (a) to vote their claims as holders of Second Priority Notes in favor of the Plan, *id.* § 2(a)(iii); (b) to consent to the actions contemplated by the Second RSA and the Plan, *id.* § 2(a)(ii); (c) not to support or vote for any alternative or competing plan of reorganization, *id.* § 2(b)(i); and (d) to forbear from exercising default-related rights, including claims on CEC's guarantee of the Second Priority Notes, *id.* § 3(a). The obligation to vote in favor of the Plan, and to refrain from voting for any alternative or competing plan, extends until July 15, 2016, unless the agreement is terminated earlier, and cannot be revoked absent agreement by Second Priority Noteholders holding more than two-thirds of the aggregate amount of all Second Priority Notes locked up under the agreement. *Id.* §§ 1(a), 8(e). The failure to "vote in favor of the Plan" or refrain from voting in favor of an alternative plan purportedly entitles CEC to seek "specific performance and injunctive or other equitable relief . . . including, without limitation, an order of the Bankruptcy Court . . . requiring any Party to comply promptly with any of its obligations under the RSA." *Id.* § 23.

20. The Second RSA provides CEOC the right to amend the Plan, without the consent of either CEC or the locked-up Second Priority Noteholders, in the event that the CEOC "Governance Committee determines, in its business judgment, that in order for the Plan to be confirmed by the Bankruptcy Court it must direct CEC to contribute the Class Convertible Notes to [CEOC] for *pro rata* distribution under the Plan to the applicable class or classes of holders of Second Lien Bond Claims and/or Unsecured Debt . . . " Second RSA § 14(c). The Second RSA further provides that CEOC has the right to direct CEC to contribute *all* of the consideration under the Second RSA (the Class Convertible Notes, the Class Acceptance Payment and the

7

RSA Forbearance Fees) to CEOC for distribution to the entire class of Second Priority Notes if more than two-thirds of Second Priority Noteholders execute the agreement and the Governance Committee determines that it must exercise this right. *Id.* § 14(b).

## CLAIMS FOR RELIEF

## COUNT ONE

### Declaratory Relief
### (Improper Procurement Of Votes In Favor Of Plan And Against Alternative Plan)

21.    The Noteholder Committee realleges and incorporates as if fully set forth herein the allegations set forth in Paragraphs 1 to 20 of this Complaint.

22.    This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

23.    An actual controversy exists between the Noteholder Committee and CEC regarding whether CEC has engaged and continues to engage in the improper purchase of votes pursuant to the Second RSA.

24.    The Second RSA constitutes an unlawful attempt by CEC to pay Second Priority Noteholders to vote in favor of the Plan and not to vote in favor of any alternative plan.

25.    Section 1129(a)(3) of the Bankruptcy Code permits confirmation of a plan only if it is "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Section 1126(e) of the Bankruptcy Code provides in part that "the court may designate any entity whose acceptance or rejection of such plan . . . was not . . . procured in good faith or in accordance with the provisions of this title." 11 U.S.C. § 1126(e).

26.    Where, as here, a non-debtor insider makes payments to a creditor in exchange for its agreement to vote in favor of a plan of reorganization, the plan violates section 1129(a)(3) and

8

the vote cast by the creditor who received payment is deemed to have been procured in bad faith in violation of section 1126(e).

27. Pursuant to 28 U.S.C. § 2201, the Noteholder Committee is entitled to and respectfully requests that the Court declare and adjudge that CEC's payment or agreement to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC, or against any alternative plan, whether pursuant to the Second RSA or otherwise, is unlawful and prohibited under the Bankruptcy Code.

## COUNT TWO

### Injunctive Relief
### (Against Improper Procurement Of Votes In Favor Of Plan And Against Alternative Plan)

28. The Noteholder Committee realleges and incorporates as if fully set forth herein the allegations set forth in Paragraphs 1 to 27 of this Complaint.

29. CEC's payment or agreement to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC, or against any alternative plan, whether pursuant to the Second RSA or otherwise, threatens irreparable harm to Second Priority Noteholders and all stakeholders.

30. The Noteholder Committee has no adequate remedy at law.

31. Pursuant to Federal Rule of Bankruptcy Procedure 7065, Federal Rule of Civil Procedure 65 and 11 U.S.C. § 105(a), an injunction is necessary and appropriate to enjoin CEC from paying or agreeing to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC, or against any alternative plan, whether pursuant to the Second RSA or otherwise.

**WHEREFORE**, the Noteholder Committee respectfully requests that this Court enter a judgment:

(1)     Declaring that that CEC's payment or agreement to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC, or against any alternative plan, whether pursuant to the Second RSA or otherwise, is unlawful and prohibited under the Bankruptcy Code;

(2)     Enjoining CEC, on a preliminary and permanent basis, from paying or agreeing to pay or provide any consideration to Second Priority Noteholders in exchange for a vote in favor of a plan of reorganization proposed by CEOC, or against any alternative plan, whether pursuant to the Second RSA or otherwise; and

(3)     Granting such other and further relief as the Court deems appropriate.

Dated: August 10, 2015
      Chicago, Illinois

Respectfully submitted,

*/s/Timothy Hoffmann*
Timothy Hoffmann (No. 6289756)
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Telephone:   (312) 782-3939
Facsimile:    (312) 782-8585
thoffmann@jonesday.com

-and-

Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester
Joshua D. Morse
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:   (213) 489-3939
Facsimile:    (213) 243-2539

*Attorneys for Plaintiff, the Official Committee of Second Priority Noteholders*